# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 6, 2009         Decided June 29, 2010

No. 09-3062

UNITED STATES OF AMERICA,
APPELLEE

v.

CHARLES E. COUGHLIN,
APPELLANT

Consolidated with 09-3063

Appeals from the United States District Court
for the District of Columbia
(No. 1:08-cr-00334-HHK-1)

*Steven M. Klepper* argued the cause for appellant. With him on the briefs was *John A. Bourgeois*.

*Amanda Winchester*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Roy W. McLeese III* and *Susan B. Menzer*, Assistant U.S. Attorneys.

Before: TATEL, GARLAND, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: The government accused defendant Charles Coughlin of defrauding the September 11th Victim Compensation Fund, which awarded him $331,034 for damages he said he sustained as a result of the September 11, 2001 attack on the Pentagon. Coughlin was indicted on five counts of mail fraud, one count of making a false and fraudulent claim, and one count of theft of public money. A jury acquitted him on three of the mail fraud counts, but was unable to reach a verdict on the remaining counts. Coughlin argues that a retrial on the remaining counts would run afoul of the Double Jeopardy Clause, which "precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Yeager v. United States*, 129 S. Ct. 2360, 2366 (2009) (citing *Ashe v. Swenson*, 397 U.S. 436 (1970)).

We agree with Coughlin that the Double Jeopardy Clause bars his retrial on the remaining mail fraud counts, and we therefore direct their dismissal. We disagree, however, that a retrial on the false claim and theft counts would require the government to relitigate any issue that the jury necessarily decided in Coughlin's favor. Accordingly, the government may retry him in a case limited to those counts.

I

Coughlin, an officer in the United States Navy, was working in the Pentagon when terrorists crashed a hijacked plane into the building on September 11, 2001. In December 2003, Coughlin submitted (by fax and subsequent hand-delivery) a claim to the September 11th Victim Compensation Fund (VCF), which Congress created to compensate people who were injured in the attacks of that day. Coughlin's papers averred that the plane struck the Pentagon seventy-five feet from

where he was working and caused the ceiling over his desk to collapse. He stated that he was hit by flying debris and that he struck his head while participating in rescue efforts in a smoke-filled area.

On January 22, 2004, Coughlin's attorney, Walter Laake, hand-delivered a claim application, with an attached cover letter, to the VCF. On February 3, Laake mailed the VCF a corrected version of the cover letter. Together, the papers stated that the injuries Coughlin suffered on 9/11 caused him severe and permanent disabilities. These included neck, head, and upper back pain; restricted range of motion; and weakness and numbness in his left arm and hand. Due to his injuries, Coughlin said, he could no longer play certain sports, and his medical needs forced him to take time off from work. As a further consequence, he was no longer able to take care of household maintenance tasks like painting, electrical wiring, and installing a patio. Instead, he said, he had to pay others to do these tasks, and he included a list of ten checks he had written for that purpose. The application made clear, however, that Coughlin was not seeking compensation for such replacement services or any other economic damages. Letter from W. Laake to VCF (Jan. 22, 2004) (Record Extract (R.E.) 2566). Rather, explaining that Coughlin's condition was "permanent and painful," the application averred that Coughlin sought $180,000 in compensation solely "for the personal injuries that he suffered." *Id.*

The VCF initially determined that Coughlin was ineligible for compensation, in part because he had not sought medical treatment within the time allowed by the Fund. On February 17, 2004, Coughlin appealed that determination, explaining the delay and asking for a waiver of ineligibility that was available to rescue workers. On February 20 and March 9, Coughlin submitted additional materials, including certified medical

records and a report from a physician. Thereafter, the VCF reversed itself and, on April 14, informed him that he was eligible for a "presumed award" of $60,000 -- which represented "zero dollars of economic loss and $60,000 of noneconomic loss." Trial Tr. 35-36 (Mar. 16, 2009); *see* Letter from VCF to Coughlin (Apr. 14, 2004) (R.E. 2843). The VCF advised Coughlin that he could either accept that amount or seek an appeal hearing. On April 30, Coughlin's attorney sent the VCF a letter seeking such a hearing.

The appeal hearing took place on May 13, 2004. Coughlin's attorney told the hearing officer that Coughlin was seeking review for two reasons. The $60,000 presumed award for non-economic loss was, he said, "unfair and inadequate and in and of itself would give rise to a request for review." Award Appeal Hr'g Tr. 6 (May 13, 2004). But the presumed award was also "an egregious error" because it "provided no compensation for economic loss to the Claimant." *Id.* at 5. The attorney acknowledged that the failure to award compensation for economic loss was not the VCF's fault. As he explained: "[O]ne of the things that we didn't spell out in the initial claim and that the claim evaluator really didn't have before him -- and it was an oversight on my part . . . -- was the fact that there was a past, present, and future loss of earnings component to this claim, which was never even made initially." *Id.* at 6-7; *see id.* at 51-52 (reiteration by Coughlin's attorney that the January 22 claim application "did not include the economic loss that we presented to you today").

In support of his appeal, Coughlin submitted ten new exhibits, nine of which addressed his economic loss. These included a letter documenting the time he had taken off from work for doctor appointments and physical therapy, which Coughlin then translated into lost salary. He also offered 32 carbon copies of checks purportedly reflecting payments to

others for household services he could no longer perform himself. And he provided a six-page schedule setting out and totaling his past and future economic claims.

The VCF reached its final decision on June 1, awarding Coughlin $331,034. The award was composed of $151,034 for economic damages and the entire $180,000 he had requested for non-economic injury. *See* Letter from VCF to Coughlin (June 2, 2004) (R.E. 2851).

On October 31, 2008, a grand jury indicted Coughlin, charging that, "[f]rom in or about December 2003, and continuing until in or about June 2004," he "willfully and knowingly devised, and intended to devise, a scheme and artifice to defraud the VCF and to obtain money by means of false and fraudulent pretenses and representations." Indictment ¶ 6. The indictment alleged, inter alia, that Coughlin submitted false and misleading information about his pre- and post-September 11 medical condition and about his loss of earnings.

The indictment contained five counts of mail fraud in violation of 18 U.S.C. § 1341 -- one for each letter that Coughlin sent or caused to be sent to the VCF while pursuing his claim. Count One was for the February 3, 2004 version of the cover letter that Coughlin's attorney had initially hand-delivered to the VCF on January 22, 2004. Count Two was for Coughlin's February 17 appeal of the VCF's initial ineligibility decision. Count Three was for the February 20 letter that enclosed certified copies of Coughlin's medical records. Count Four was for the March 9 letter that enclosed additional exhibits that Coughlin offered to support his rescue activities and physical injuries. And Count Five was for Coughlin's April 30 request for an appeal hearing regarding the amount of the VCF award.

The indictment also included two non-mail-fraud counts. Count Six charged Coughlin with making a false and fraudulent claim in violation of 18 U.S.C. § 287. And Count Seven charged him with theft of public money in violation of 18 U.S.C. § 641.

After a month-long trial, a jury acquitted Coughlin on three of the five mail fraud charges -- Counts Two, Three, and Five. It was unable to reach a verdict on the other four counts. On April 15, 2009, the district court declared a mistrial.[1]

The government did not dispute that the Fifth Amendment's Double Jeopardy Clause barred it from retrying Coughlin on the charges of which the jury acquitted him. It did, however, seek to retry him on those counts as to which the jury was unable to reach a verdict. Coughlin objected, invoking a prong of double jeopardy analysis known as "issue preclusion" (also referred to as "collateral estoppel"). As the Supreme Court explained in *Ashe v. Swenson*, this prong bars the government from prosecuting a defendant on a charge that depends on facts that a previous acquittal on a different charge necessarily decided in the defendant's favor. 397 U.S. 436, 443-44 (1970).

At the time of the April 15 mistrial, the rule in this Circuit (and several others) was that *Ashe* did not bar retrial in a case like Coughlin's. In *United States v. White*, the Circuit had held that, where the same jury acquits a defendant on some charges and cannot reach a verdict as to others, the acquittals could not have been based on a fact upon which the hung counts depended. 936 F.2d 1326, 1329 (D.C. Cir. 1991). To conclude otherwise, *White* said, would be to "assume that the jury acted

---

[1]Coughlin's wife had also been a defendant in the trial, charged only with the count of theft of public money (Count Seven). After the jury hung on that count, the government opted not to retry her.

inconsistently, reaching opposite findings on the same issue in the different counts." *Id.* Adhering to *White*, the district court denied Coughlin's double jeopardy motion. On June 8, 2009, a new trial commenced on the two remaining mail fraud counts, as well as on the false claim and theft counts.

On June 18, in the midst of the second trial, the Supreme Court decided *Yeager v. United States*, 129 S. Ct. 2360 (2009). *Yeager* expressly overruled the decisions of those circuits, including our own, that had held that a conflict between acquittals and hung counts barred the application of issue preclusion. 129 S. Ct. at 2365 (citing *White*, 936 F.2d 1326). Relying on *Yeager*, Coughlin promptly renewed his motion to bar retrial. He argued that the only disputed issue at the first trial was his fraudulent intent; that by acquitting him on some mail fraud counts, the jury necessarily found that he had acted in good faith when he sought money from the VCF; and that this finding precluded liability on all of the remaining counts. On June 30, the district court denied Coughlin's motion, concluding that, although his argument regarding the two mail fraud counts was not "frivolous in the legal sense of that word, i.e. lacking a legal basis or legal merit," it failed to satisfy the *Yeager* test. Order at 3, *United States v. Coughlin*, No. 08-334 (D.D.C. June 30, 2009). As for the false claim and theft counts, the court said, Coughlin's double jeopardy argument simply "lack[ed] legal merit." *Id.* at 4.

Coughlin then filed this appeal and an emergency motion to stay the ongoing retrial. Although the appeal is interlocutory, we have jurisdiction because denials of double jeopardy motions fall within the collateral-order exception to the usual rule barring review of non-final judgments. *Abney v. United States*, 431 U.S. 651, 657-59 (1977); *United States v. Ginyard*, 511 F.3d 203, 208 (D.C. Cir. 2008). A special panel of this court stayed the trial pending the appeal. The panel found the stay warranted in light

of the "unusual circumstances presented" by *Yeager*'s mid-trial reversal of Circuit precedent, and in light of the district court's determination that Coughlin's double jeopardy claim was not frivolous, at least as to the mail fraud counts. Order at 1-2, *United States v. Coughlin*, No. 09-3062 (D.C. Cir. July 8, 2009).

II

We review de novo the district court's determination that issue preclusion does not bar Coughlin's retrial. *See United States v. TDC Mgmt. Corp.*, 24 F.3d 292, 295 (D.C. Cir. 1994). In this part, we set forth the principles of issue preclusion. In Part III we apply them to the two mail fraud counts as to which the jury failed to reach a verdict, and in Part IV we apply them to the false claim and theft counts upon which the jury also hung.

In addition to barring retrial of a charge upon which a defendant was acquitted, *Yeager*, 129 S. Ct. at 2365-66, "the Double Jeopardy Clause precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial," *id.* at 2366. "To decipher what a jury has necessarily decided," *Yeager* reaffirmed, "courts should 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'" *Id.* at 2367 (quoting *Ashe*, 397 U.S. at 444). This "inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.'" *Id.* (quoting *Ashe*, 397 U.S. at 444).

*Yeager* also instructed how, in determining what the jury decided on the acquitted charges, we should account for the fact that the jury was unable to reach a verdict on other charges. The

answer? Not at all. "[T]he jury's inability to reach a verdict," the Court held, is "a nonevent." *Id.* "Because a jury speaks only through its verdict, its failure to reach a verdict cannot -- by negative implication -- yield a piece of information that helps put together the trial puzzle." *Id.* Thus, in our analysis of why the jury acquitted Coughlin on three of the mail fraud counts, we must not "conjecture about possible reasons for [the] jury's failure to reach a decision" on the other two mail fraud counts or on the false claim and theft counts. *Id.* at 2368. And, if we determine that an issue necessarily decided in Coughlin's favor on the acquitted counts is an "essential element" of a hung count, we must bar retrial on that count notwithstanding the jury's failure to reach a verdict. *Id.* at 2369.

A few more points are worth emphasizing. The Court has directed that our analysis of what the jury decided should be conducted with "realism and rationality," *Ashe*, 397 U.S. at 444, and that we should not presume "that the jury may have disbelieved substantial and uncontradicted evidence of the prosecution on a point the defendant did not contest," *id.* at 444 n.9 (internal quotation marks omitted). At the same time, if multiple potential reasons for acquittal are evident in the record of the trial, we will not presume that the jury acquitted on the ground most favorable to the defendant. The question is what the jury "necessarily" decided, *Yeager*, 129 S. Ct. at 2366; there is no collateral estoppel if a different ground "could" have been a rational basis for acquittal, *Ashe*, 397 U.S. at 444. Finally, "the burden [is] on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was [necessarily] decided in the first proceeding." *Dowling v. United States*, 493 U.S. 342, 350-51 (1990); *see Yeager*, 129 S. Ct. at 2368 n.6.

III

The indictment in this case charged that, "[f]rom in or about December 2003, and continuing until in or about June 2004," Coughlin willfully and knowingly devised a scheme to defraud the VCF and to obtain money by means of false and fraudulent pretenses and representations. Indictment ¶ 6. It further charged that, "for the purposes of executing and attempting to execute" this scheme, Coughlin caused to be delivered by the U.S. Postal Service or Federal Express five pieces of mail, which formed the bases for the five mail fraud counts. *Id.* ¶ 19. The five mailings were: a February 3, 2004 version of the cover letter that Coughlin's attorney had first sent to the VCF the previous month (Count One); Coughlin's February 17 appeal of the VCF's initial decision that he was ineligible for compensation (Count Two); a February 20 letter to the VCF that enclosed certified copies of Coughlin's medical records (Count Three); a March 9 letter that enclosed additional exhibits that Coughlin intended to present (Count Four); and Coughlin's April 30 request for a hearing on the amount of the VCF's award (Count Five).

As noted above, the jury acquitted Coughlin on Counts Two, Three, and Five. The question we consider here is whether, in so doing, the jury necessarily decided facts in Coughlin's favor that constitute an essential element of the remaining mail fraud counts, Counts One and Four. If so, the Double Jeopardy Clause would preclude their reprosecution. This question has two parts: What facts were necessarily decided by the jury's acquittals on Counts Two, Three, and Five? And, do those facts make up an essential element of the remaining counts?

A

To prove mail fraud, the government must show: "'(1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme.'" *United States v. Reid*, 533 F.2d 1255, 1264 (D.C. Cir. 1976) (quoting *Pereira v. United States*, 347 U.S. 1, 8 (1954)); *see Carter v. United States*, 530 U.S. 255, 261 (2000).[2] To commit the offense, the defendant must have fraudulent intent at the time of the charged mailing: that is, he must both have a fraudulent scheme in mind and intend that the mailing further that scheme. *See* 18 U.S.C. § 1341 (providing that the defendant must have "devised or intend[ed] to devise a[] scheme" to defraud and must have caused an item to be delivered by mail "*for the purpose of* executing such scheme" (emphasis added)); *see also Schmuck v. United States*, 489 U.S. 705, 715 (1989) (stating that the "relevant question . . . is whether the mailing is part of the execution of the scheme *as conceived by the perpetrator at the time*" of the mailing (emphasis added)). The mailing, however, may be "innocent in and of itself" and "need not be an essential element of the scheme." *Schmuck*, 489 U.S. at 710-11. "It is sufficient for the mailing to be incident to an essential part of the scheme . . . ." *Id.* (internal quotation marks omitted).

Coughlin's defense at trial was that he lacked fraudulent intent because he had always acted in good faith. As his attorney emphasized in closing argument, "the key element[]" of the charges against him was "intent to defraud." Trial Tr. 79 (Apr. 7, 2009). The district court advised the jury that Coughlin

---

[2]*See* 18 U.S.C. § 1341 (providing that the offense is committed by "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, . . . for the purpose of executing such scheme or artifice . . . knowingly causes to be delivered" by the Postal Service or a commercial interstate carrier any "matter or thing").

asserted he had "acted in good faith," and instructed that "[i]f the evidence in this case leaves the jury with a reasonable doubt as to whether [Coughlin] acted in good faith, the jury must acquit him." Trial Tr. 86-87 (Apr. 8, 2009). Based on the record before us, we conclude that, in acquitting Coughlin on three counts of mail fraud, the jury necessarily found that he lacked fraudulent intent when he mailed each of the three letters referenced in those counts.

1. In opposing Coughlin's double jeopardy motion in the district court, the government contended that the jury might have acquitted Coughlin not because it thought he had no "scheme to defraud" in mind, but rather because it thought the three "particular mailings" referenced in Counts Two, Three and Five "were not in furtherance thereof." Gov't's Opp'n to Def.'s Renewed Mot. to Bar Re-Trial at 4 (June 24, 2009) (underscoring in original). The jury could have thought this, the government argued, because it could have viewed the three mailings as merely "procedural" communications that contained no misrepresentations. *Id.* at 4 & n.1. The mailing at issue in Count Five, for example, was simply a form on which Coughlin had checked a box indicating that he wanted a hearing on the amount of his award.

The jury may well have thought there were no misrepresentations in any of the three mailings at issue. But even if it did, it could not have acquitted Coughlin on that basis. The law is clear that "innocent mailings -- ones that contain no false information -- may supply the mailing element." *Schmuck*, 489 U.S. at 715 (internal quotation marks omitted). It is also clear that "the elements of mail fraud [may] be satisfied where the mailings [are] routine," *id.* -- or, to use the government's adjective, "procedural." As the district court instructed the jury: "It is not necessary for the Government to prove that the items mailed . . . contained any false or fraudulent statement . . . or

contain[ed] any request for money . . . . The government must prove . . . , however, that the use of the mails . . . further[ed] or advanced or carried out in some way the scheme." Trial Tr. 81 (Apr. 8, 2009).[3] The government itself emphasized this point. There is "no requirement that the items that actually get mailed be false," the prosecutor said in closing argument. "All the documents that got mailed could be perfectly true, as long as they were used as part of a scheme to defraud." Trial Tr. 11 (Apr. 7, 2009). Accordingly, the prosecutor assured the jury, "this won't be a big issue for you, because . . . [a]ll the government has to prove is that things were mailed to the VCF, and they were mailed for the purpose of advancing the scheme." *Id.*

Given the court's instructions and the government's arguments, "a rational jury could [not] have grounded its verdict," *Yeager*, 129 S. Ct. at 2367 (quoting *Ashe*, 397 U.S. at 444), on the conclusion that the mailings were not sent in furtherance of the fraudulent scheme -- *if* such a scheme existed at the time of each mailing. *If* the jury believed Coughlin had a fraudulent scheme in mind on February 17, 2004, the date of the letter referenced in Count Two, it could not have doubted that the letter furthered that scheme. The February 17 letter enclosed a form appealing the VCF's initial determination that Coughlin was ineligible for compensation; without the letter, the alleged scheme to defraud the VCF of money could not have continued. *See* Letter from VCF to Coughlin (Feb. 3, 2004) (R.E. 2831) (explaining that, to appeal the ineligibility determination, Coughlin must mail the appeal form to the VCF). Similarly, the

---

[3]This instruction was slightly imprecise. The mailing need not *actually* further the scheme. So long as it was mailed "for the purpose of executing a fraudulent scheme," a mailing satisfies the statute even if "later, through hindsight," it "may prove to have been counterproductive." *Schmuck*, 489 U.S. at 715.

February 20 letter -- referenced in Count Three -- furthered the alleged scheme because it contained certified copies of medical records, a prerequisite for compensation under VCF regulations. *See* Trial Tr. 192 (Mar. 11, 2009). And the same is true of the April 30 letter referenced in Count Five. If Coughlin had a fraudulent scheme in mind on that date, the letter furthered it because it sought a hearing at which he could argue for increased compensation; without the mailing, he could have collected no more than the $60,000 already awarded.

In short, all of these mailings would have furthered a fraudulent scheme -- if there were one -- and it would not have been rational for the jury to have thought otherwise or to have believed Coughlin thought otherwise. Accordingly, the government's argument does not support the conclusion that the jury acquitted Coughlin without determining that he did not have a fraudulent scheme in mind at the relevant times.

2. On appeal, the government offers a slightly different, but still unpersuasive, theory for why the jury might have acquitted Coughlin of three counts of mail fraud yet still believed that he had a fraudulent scheme at the time of each of the three mailings. The government argues that, while it may have satisfied the jury that Coughlin had a "scheme or artifice to defraud" at all relevant times, it may have failed to prove that he made those three mailings "for the purpose of executing" that scheme. 18 U.S.C. § 1341. To fill out this theory, the government suggests that the jury could have found that Coughlin's VCF claim was only partially fraudulent, that is, he "may have been entitled to some compensation but . . . lied about certain specific aspects of his request for compensation," such as the extent of his injuries. Appellee's Br. 44. The acquitted mailings, the government maintains, "could have been viewed by the jury as possibly directed at an entirely legitimate effort to obtain some compensation, rather than as an intentional

and bad-faith effort to go beyond that to obtain compensation to which appellant was not entitled." *Id.*

As we discuss in Part IV, we agree with the government's premise that the jury may have thought the scheme was "narrower than the government alleged." *Id.* at 51. That is, Coughlin may have intended to defraud the government with respect to certain aspects of his request for compensation, but had good faith with respect to others. But we do not think that a rational jury could have believed both that Coughlin had a fraudulent scheme in mind on the date of a particular mailing, and that he nonetheless intended that mailing to further only a legitimate purpose.

For example, *if* the jury believed Coughlin had in mind a scheme to defraud the VCF of even a small amount of money on the date of the letter referenced in Count Two, it could not have doubted that the letter -- which was necessary to render Coughlin eligible for any money at all -- was mailed "for the purpose" of advancing that scheme. Not surprisingly, neither Coughlin nor the government suggested otherwise at trial, and the jury would have had no reason to believe it could have acquitted on that ground. The same is true of the letters underlying Counts Three and Five, both of which plainly would have furthered the alleged scheme. *See supra* Part III.A.1.

In sum, the government has offered no valid reason to attribute the three acquittals to anything other than a finding that Coughlin lacked fraudulent intent -- i.e., that he neither had a fraudulent scheme in mind nor intended the mailings to advance such a scheme -- at the times referenced in those counts. As we cannot identify such a reason either, we conclude that the jury necessarily found Coughlin lacked fraudulent intent when he mailed the letters at issue in Counts Two, Three, and Five.

B

The remaining question in this Part is whether the jury's finding regarding Coughlin's intent with respect to the acquitted counts precludes proof of an essential element of the two mail fraud counts as to which the jury hung. We conclude that it does.

Count One charged that, on February 3, 2004, "for the purposes of executing and attempting to execute" his alleged fraudulent scheme, Coughlin mailed the VCF a version of his initial cover letter seeking compensation. Indictment ¶ 19. Count Four charged that, on March 9, he mailed certain exhibits to the VCF for the same purposes. But if Coughlin had no fraudulent scheme in mind on February 17, February 20, or April 30 -- the dates at issue in the acquitted counts -- there was no basis for concluding that he had one in mind on February 3 or March 9 either. The government did not proffer at trial -- and does not suggest on appeal -- any evidence or theory to support the proposition that Coughlin harbored a fraudulent scheme on February 3 (Count One), abandoned it on February 17 and 20 (Counts Two and Three), revived it on March 9 (Count Four), and abandoned it again prior to seeking a hearing on April 30 (Count Five). Nor can we identify any record support for such a bouncing ball of a mail fraud scheme.

Accordingly, in rendering a verdict on the acquitted counts, the jury necessarily decided that Coughlin lacked fraudulent intent during the entire period encompassed by the charged mailings -- including those mailings cited in the hung counts. And because fraudulent intent is an essential element of those counts, the Double Jeopardy Clause bars their retrial. *Yeager*, 129 S. Ct. at 2369.

IV

We now examine Counts Six and Seven, the false claim and theft of public money charges. The government does not dispute Coughlin's contention that -- on the allegations of this case -- the false claim and theft counts also require proof of fraudulent intent at the relevant times. *See* Appellee's Br. 1-2, 53-59 (acknowledging that both counts "stemmed from [Coughlin's] alleged scheme to defraud"). But while we thus treat fraudulent intent as an essential element of both counts for the purposes of this case,[4] it is not essential that Coughlin had such intent at *every* point between December 2003 and June 2004, the period encompassed by the indictment.

As the district court correctly instructed, a "claim is fraudulent if any part of it is known to be untrue and made . . . with the intent to deceive the governmental agency to which it was submitted." Trial Tr. 82 (Apr. 8, 2009). Likewise, the court instructed that theft merely requires that Coughlin -- with the requisite intent -- stole money with "a value in excess of $1,000." *Id.* at 83. The government told the jury the same thing.[5] It is therefore sufficient for the government to prove that

---

[4]Of course, theft of public money "need not [always] be accomplished by false pretenses or other fraudulent means," *United States v. Coachman*, 727 F.2d 1293, 1302 (D.C. Cir. 1984); breaking into Fort Knox would do the trick. Nor need we decide whether specific intent to defraud is a sine qua non of every case under the false claim statute. *Compare United States v. Montoya*, 716 F.2d 1340, 1345 (10th Cir. 1983) (suggesting that it is), *with United States v. Maher*, 582 F.2d 842, 847 (4th Cir. 1978) (holding that it is not); *see also United States v. Grainger*, 346 U.S. 235, 241-44 (1953); *United States v. Catton*, 89 F.3d 387, 392 (7th Cir. 1996).

[5]*See* Trial Tr. 13 (Apr. 7, 2009) ("[F]or false claims . . . you don't have to believe that the entire claim was false. All the government has

Coughlin had the requisite fraudulent intent at the time he made part of a false claim, even if that part did not constitute the entirety of the amount he was seeking over the period charged in the indictment. Such proof also suffices for the theft count because the indictment alleged that Coughlin carried out his theft by means of the same false claim.

We now proceed to consider whether proving this essential element would require "relitigating any issue that was necessarily decided by [the] jury's acquittal" on the three mail fraud counts. *Yeager*, 129 S. Ct. at 2366. We conclude that it would not.

A

The indictment charged a fraudulent scheme that ran from December 2003 through June 2004. As we held in Part III, the jury's acquittal on the last of the five mail fraud counts (Count Five) necessarily means it found that Coughlin did not have the requisite fraudulent intent on April 30, the date of that mailing. Moreover, because the government did not suggest -- either through argument or evidence -- that Coughlin had previously harbored such a scheme but had abandoned it by April 30 (or that he had repeatedly abandoned and revived it in "bouncing ball" fashion), the jury's acquittal on Count Five necessarily means it found that he lacked the requisite intent prior to that time as well.

It does not follow, however, that Coughlin necessarily lacked the requisite intent *after* April 30. In finding that no

to prove . . . is that a claim was false either entirely or in part. So even if you found that only part of it was false, he still . . . would be guilty [of] that offense."); *id.* at 14 (noting that Coughlin was charged with knowingly "stealing . . . money in excess of $1,000").

fraudulent scheme existed on or before April 30, the jury did not necessarily decide anything about Coughlin's state of mind after that date. To put it another way: if the jury believed that Coughlin only made fraudulent misrepresentations at the May 13 hearing, it could still have acquitted him of mail fraud regarding the April 30 mailing. Indeed, if that were the jury's belief, it could only have convicted him for the April 30 mailing if it had no basis for distinguishing between his pre- and post-April 30 intent, and hence viewed the May 13 misrepresentations as proof of fraudulent intent stretching back to April 30. But while the government had neither theory nor evidence for temporally distinguishing Coughlin's intent *during* the period from December 2003 through April 2004, it had both to support the conclusion that something new arose thereafter.

According to the government, the jury could have partially rejected the charges in the indictment by determining that, through April 2004, Coughlin sought only compensation to which he believed he was entitled. In finding that Coughlin lacked fraudulent intent during that period, the jury could have determined that he had been *physically* injured in the attack on the Pentagon and that, through April, he was only seeking compensation for such physical injuries in good faith. Nonetheless, the government continues, its trial team presented the jury with a basis for concluding that, by the time of the May 13 hearing, Coughlin was seeking additional compensation -- specifically, for *economic* injury -- to which he knew he was not entitled. And a rational jury could have believed that Coughlin committed fraud on that date by submitting false evidence of such injury.

This contention is consistent with the arguments the government made at trial. The prosecutor began her opening statement by describing the manner in which she alleged Coughlin had initially schemed to falsely persuade the VCF that

the events of 9/11 caused him to suffer a physical disability. The "evidence will show you," the prosecutor said, "that [Coughlin] was injured long before 9/11," Trial Tr. 14 (Mar. 10, 2009), that he "created and manipulated the evidence to make it appear that he suffered a significant injury on 9/11, when he knew that wasn't the case," *id.* at 16, and that this manipulation included the submission of false medical information through the mail, *id.* at 26. But once those false submissions led to reversal of the ineligibility determination, the prosecutor continued, "the question" was not whether Coughlin would receive an award but "how much." *Id.* at 27. "So, defendant Charles Coughlin *schemed to increase* the amount of his award. *At the hearing on May 13th, 2004*, he submitted receipts and copies of check carbons that he claimed represented payments to others for services that he could no longer perform. As you will hear, this was not completely true." *Id.* (emphases added).

That a rational jury could have believed there was fraud at the May 13 hearing, even if it found there was none before, is also consistent with the evidence at trial. The January 22 application letter that Coughlin's attorney first sent the VCF expressly stated that "[t]here is no claim for loss of income or loss of past or present earnings in this case." Letter from W. Laake to VCF (Jan. 22, 2004) (R.E. 2641). Rather, the letter made clear that Coughlin's "claim is for the personal injuries that he suffered." *Id*. He sought precisely $180,000 -- $5,000 a year, multiplied by a life expectancy of 36 additional years -- "for what he has suffered and what he is likely to suffer for the rest of his life." *Id.*

By the time of the May 13 hearing, however, Coughlin's claims had expanded. As his attorney explained to the hearing officer, Coughlin was now seeking review of the VCF's $60,000 award for two reasons. Award Appeal Hr'g Tr. 5-6 (May 13, 2004). First, as a measure of non-economic loss it "amounts to

approximately $1,690 a year," which was "unfair and inadequate and in and of itself would give rise to a request for review." *Id.* But that amount was also "an egregious error" because it "provided no compensation for *economic* loss to the Claimant." *Id.* at 5 (emphasis added). As the attorney acknowledged, however, this was not the VCF's fault: "[O]ne of the things that we didn't spell out in the initial claim and that the claim evaluator really didn't have before him -- and it was an oversight on my part . . . -- was the fact that there was a past, present, and future loss of earnings component to this claim, which was never even made initially." *Id.* at 6-7. That is, the attorney reiterated at the end of the hearing, the January 22 application "did not include the economic loss that we presented to you today." *Id.* at 51-52.

Coughlin submitted nine new exhibits in support of his new claim for economic loss on May 13. One was a statement from Coughlin's employer -- a statement that Coughlin, himself, had written -- representing that his salary was $150,000 and that he had been forced to take 90 hours off from work for medical appointments relating to the injuries he suffered on 9/11. Letter from J. Sayres to VCF (undated) (Record Material Tab E); *see* Trial Tr. 18 (Apr. 6, 2009). A second was a detailed schedule of "past economic losses" and "future economic losses." R.E. 2797-802. To calculate past economic losses, the schedule multiplied the hours that Coughlin said he missed for medical appointments by the hourly value of his $150,000 salary. To estimate losses due to future appointments, it applied the same hourly value.

The schedule also listed payments that Coughlin said he had made for such tasks as painting, window washing, and putting up Christmas lights. This, he said, was work he would have done himself but for his injuries. To substantiate these payments, Coughlin for the first time included what he

represented were carbon copies of the original checks. The payments formed the basis for his estimates of the cost of future replacement services for which he now sought compensation.

At trial, the government contended that Coughlin's economic submissions at the May 13 hearing were fraudulent. It offered evidence that Coughlin's yearly salary -- the basis for the calculation of the value of his lost time -- had never been $150,000. *See* Trial Tr. 22-26 (Apr. 6, 2009). It elicited testimony that most of the injury-related absences from work claimed by Coughlin had never happened, and that the few that had took much less time than he indicated in that calculation. Trial Tr. 28-32 (April 6, 2009). A special agent also testified that much of the financial information Coughlin submitted to support his estimate of the cost of future replacement services did not match up with bank records. The agent said Coughlin listed checks that were actually for lower amounts, were made out to different payees, or did not exist at all. Trial Tr. 4-43 (Mar. 25, 2009). So, too, many of the carbons Coughlin submitted did not match the checks that actually passed through his bank account. *See, e.g.*, *id.* at 25-27 (testimony that checks corresponding to carbons indicating payment for window-washing services were actually made out to a swim club and an income-tax preparer). In total, the government contended that more than a third of the 32 check carbons submitted on May 13 were "fake." Trial Tr. 47-50 (Apr. 7, 2009).

To summarize: Although the jury's acquittals necessarily decided that Coughlin lacked fraudulent intent prior to May, that did not preclude proof of an essential element of the false claim and theft counts. What was essential for those counts was proof that he had the requisite intent when he made false submissions before the end of June, the close of the period specified in the indictment. Because the evidence regarding the May 13 hearing would have permitted a rational jury to convict him on those

counts while acquitting him on the (earlier) mail fraud counts, the Double Jeopardy Clause does not bar reprosecution.

B

Coughlin offers several arguments to rebut the contention that the jury could have acquitted him on the mail fraud counts without also deciding facts that preclude retrial on the false claim and theft charges. None persuade us.

1. Coughlin maintains that we must bar retrial on Counts Six and Seven because he presented the defense of good faith -- which the jury necessarily accepted with respect to the acquitted counts -- as a defense to all of the charges against him. *See* Appellant's Br. 48-49. We agree that if the jury believed Coughlin acted in good faith with respect to all of the submissions he made to the VCF, he could not be retried on any of them. But it does not follow that, because the jury believed Coughlin was acting in good faith at the time of some of his submissions, it had to have believed that was so with respect to each of them.

Coughlin never made such an argument to the jury. Instead, in his closing, Coughlin's attorney carefully countered the government's evidence with respect to each individual accusation of fraud or falsity, one by one. The failure to argue that everything rose and fell together was for good reason. Coughlin would hardly have wanted the jury to think that good faith was an all-or-nothing defense in the opposite sense -- that if the jury found bad faith with respect to any one of the statements that Coughlin made, it would necessarily have to convict him on all seven counts.

Nor did the government suggest that conviction depended upon a conclusion that Coughlin's claims were offered wholly

in bad faith. We have already noted that it told the jury that "you don't have to believe that the entire claim was false." Trial Tr. 13 (Apr. 7, 2009); *see supra* note 5. More directly, the prosecutor told the jury that it could convict even if it found that Coughlin had good faith with respect to some of his submissions. "You may very well believe he was hurt," the government acknowledged, but "[w]hat we've proven to you with evidence is that he lied to the VCF" about other matters. Trial Tr. 43, 44 (Apr. 8, 2009).

2. Coughlin also contends that, because the indictment described a single fraudulent scheme that assertedly lasted from December 2003 through June 2004, the jury could not have found a narrower scheme that did not begin until May 2004. We agree with the defendant that, for the government to prevail on the "narrower scheme" theory on appeal, it must have presented the jury with the possibility of finding such a scheme at trial. *See Ashe*, 397 U.S. at 445; *Sealfon v. United States*, 332 U.S. 575, 579-80 (1948). But as we noted above, the government did tell the jury that Coughlin made new false claims at the May 13 hearing -- claims relating to economic damages -- that were in addition to the allegedly false claims he had previously made regarding physical injuries. And the trial evidence provided a basis for this distinction. *See supra* Part IV.A.[6]

The fact that the indictment alleged a singular "scheme" did not (and does not) bar the government from making the narrower-scheme argument.[7] To the contrary, it is both common

---

[6]These circumstances distinguish the various circuit court opinions Coughlin cites for the proposition that the government may not retry him on a theory not presented at the first trial.

[7]We also note that, unlike the mail fraud statute, there is no "scheme" requirement in the text of either the false claim or the theft

and appropriate for the government to allege a broader scheme yet prove a narrower one. In *United States v. Miller*, for example, the Supreme Court rejected a claim that "the Fifth Amendment's grand jury guarantee is violated when a defendant is tried under an indictment that alleges a certain fraudulent scheme but is convicted based on trial proof that supports only a significantly narrower and more limited, though included, fraudulent scheme." 471 U.S. 130, 131 (1985) (footnote omitted). By alleging a larger scheme, the Court held, the government does not lock itself into proving every part of that scheme. Rather, it can rest on any part that suffices to establish the elements of the crime charged. *See id.* at 131, 135-36.

In accord with this principle, the circuit courts have approved convictions for mail fraud where the government proved only a (legally sufficient) subset of the bad acts with which it initially charged the defendant. As this court has noted, "it is not an infrequent practice in mail fraud cases to allege the full scheme to allow for contingencies of proof, but many times the prosecution or the court reduces the number of counts and restricts the proof to sufficient representative counts to present the substance of the offense." *United States v. Jordan*, 626 F.2d 928, 930 (D.C. Cir. 1980).[8] Nor is it unusual for the circuits to

---

statute. *Compare* 18 U.S.C. § 1341 (requiring that the defendant devised or intended to devise a "scheme or artifice to defraud"), *with id.* § 287 (requiring only that the defendant presented a "claim upon or against the United States . . . knowing such claim to be false, fictitious, or fraudulent"), *and id.* § 641 (requiring only that the defendant "embezzle[d], st[ole], purloine[d], or knowingly convert[ed] to his use . . . any . . . money, or thing of value of the United States").

[8]*See Jordan*, 626 F.2d at 930 (upholding conviction for mail fraud scheme where the indictment alleged that the proceeds of the scheme were $110,000, but the government proved only $4,000-$5,000 in fraudulent checks); *United States v. Kuna*, 760 F.2d 813,

affirm a conspiracy conviction where the conspiracy is initially charged to cover a specified period, but subsequently proved only with respect to a portion of that period.[9]

The facts at issue in *Miller*, also a prosecution under the mail fraud statute, are particularly instructive here. The indictment charged a single scheme to defraud Miller's insurer by claiming a loss due to a purported burglary, a scheme that allegedly began in July 1981 and ran until October 1981. *See* 471 U.S. at 131-32 & n.2. The indictment alleged that one "part" of the scheme involved Miller's consent to the burglary, and that a "further part" involved his fraudulent inflation of the amount of property lost in the crime. *Id.* at 132 & n.2.

---

816-19 (7th Cir. 1985) (affirming conviction on five counts of mail fraud beginning in August 1980, notwithstanding that the district court acquitted the defendant on other counts involving earlier mailings because it "rejected the government's theory that [he] had intended at the outset to defraud his investors").

[9]*See United States v. Jackson*, 627 F.2d 1198, 1202, 1212-13 (D.C. Cir. 1980) (upholding conviction where the indictment alleged a conspiracy to distribute heroin from June 24 through August 16, 1977, notwithstanding that the government failed to prove the defendant's complicity in a conspiracy prior to June 27); *United States v. Portela*, 167 F.3d 687, 694, 699-702 (1st Cir. 1999) (affirming conviction where the indictment alleged a single conspiracy lasting through July 1996, but the district court found that it ended in May 1995); *United States v. Ailsworth*, 138 F.3d 843, 848-50 (10th Cir. 1998) (upholding conviction where the indictment alleged a conspiracy between March 1993 and March 1994, but the evidence only established that the defendant participated in a conspiracy on November 19, 1993); *United States v. Bowers*, 739 F.2d 1050, 1053 (6th Cir. 1984) (affirming conviction where the government's evidence "showed a conspiracy with fewer people, of shorter duration and in a smaller area than charged" in the indictment (internal quotation mark omitted)).

Although the government proved only the latter, the Court upheld Miller's conviction, rejecting the argument that the difference between the scheme asserted and proved necessarily constituted a "fatal variance" requiring reversal. *Id.* at 131-33.

Coughlin's indictment followed the same pattern. Although Coughlin is correct that "[t]he one and only Indictment allege[d] one and only one scheme," Appellant's Reply Br. 17, that indictment alleged a scheme of many parts. Moreover, in alleging those parts, it drew the same kind of line that we draw here: the line between Coughlin's claims for physical injuries on the one hand and for economic injuries on the other. For example, the indictment charged that it "was part of the scheme" that on December 19, 2003, Coughlin "falsely claim[ed] that he suffered a partial permanent disability from the [9/11] attack," and "a further part of the scheme" that on January 22 and February 3, 2004, he "provid[ed] false and misleading information regarding his pre-September 11th and post-September 11th medical condition." Indictment ¶¶ 8, 10. But the indictment also alleged that fraud regarding economic injury was a part of the scheme. In that regard, it charged that it was yet "a further part of the scheme that on or about May 13, 2004," Coughlin submitted "manufactured copies of checks falsely claiming that they represented payments to others for performing household activities," as well as "schedules relating to losses of past earnings, knowing full well that such losses had not been incurred." Indictment ¶¶ 16, 17. Indeed, not only did the indictment distinguish physical from economic injury, it did so temporally -- it did not specify *any* misrepresentations relating to economic injury as having been made before May 13.

Thus, while Coughlin is correct that the indictment's "singular alleged scheme" was also "incorporated into Counts Six and Seven," Appellant's Reply Br. 15; *see* Indictment ¶¶ 20, 22, what we have just said about the scheme's multi-part nature

renders this observation irrelevant. Indeed, when we focus specifically on the text of the false claim and theft counts, the line between physical and economic injury stands out in high relief. Count Six charged that Coughlin's false claim "contained false and fraudulent assertions concerning [Coughlin's] medical condition and physical abilities . . . *and* false and fraudulent assertions concerning alleged economic losses resulting from those injuries." Indictment ¶ 21 (emphasis added). Similarly, Count Seven charged that Coughlin unlawfully obtained money from the United States based on "false, fraudulent and misleading . . . representations concerning [Coughlin's] physical condition . . . *and* the economic damages [he] . . . incurred and anticipated incurring as a result of the injuries [he] purportedly sustained." *Id.* ¶ 23 (emphasis added). And, as the Supreme Court has repeatedly held, the government is entitled to prove criminal acts in the disjunctive, notwithstanding that the indictment charges them in the conjunctive. *See Griffin v. United States*, 502 U.S. 46, 56-60 (1991); *Miller,* 471 U.S. at 136; *Turner v. United States*, 396 U.S. 398, 420 (1970).[10]

In sum, the fact that the indictment charged a scheme lasting from December 2003 through June 2004 did not prevent the government from attempting to prove narrower schemes of

---

[10]Indeed, under Circuit precedent, "[t]he correct method of pleading alternative means of committing a single crime is to allege the means in the conjunctive." *United States v. Lemire*, 720 F.2d 1327, 1345 (D.C. Cir. 1983); *see Joyce v. United States*, 454 F.2d 971, 976 (D.C. Cir. 1971) (stating that, "[t]o charge the offense in the disjunctive (as it appears in the strict language of the statute), that the accused did one thing 'or' the other, would make the indictment bad for uncertainty, so it is necessary to connect them with the conjunctive 'and'"). *See generally* Orin Kerr, *The Strange Practice of Indicting in the Conjunctive*, THE VOLOKH CONSPIRACY (Sept. 25, 2009, 1:23 PM), http://volokh.com/posts/1253899387.shtml (questioning the practice).

different temporal durations during that period. And as we explained in Part IV.A, the government did just that, offering evidence that after April 2004 Coughlin embarked on an effort to fraudulently obtain economic damages. The wording of Counts Six and Seven supported -- and could support on retrial -- a conviction on that basis.

3. Coughlin further argues that the jury could not have distinguished the pre- and post-April 30 evidence in the way the government suggests. Although the indictment charged that on May 13 he submitted altered copies of "checks to support a claim for the replacement cost of household services for his reduced physical abilities," Coughlin argues that "the May 13 hearing was not the first time that [he] made this claim." Appellant's Br. 56-57. Rather, his January 22, 2004 application likewise listed such replacement services -- albeit, in a lesser amount and without the supporting check carbons that the government maintained he subsequently altered.

The problem with this argument is that, although the January application did state that Coughlin had paid for replacement services, it made clear that he was *not* making a claim for such economic losses. Rather, at that time his "claim [wa]s for the personal injuries that he suffered" -- for which he sought $180,000. Letter from W. Laake to VCF (Jan. 22, 2004) (R.E. 2565). Indeed, as Coughlin's attorney later told the hearing officer, that was the case until May 13. Award Appeal Hr'g Tr. 5-7, 51-52 (May 13, 2004). Accordingly, Coughlin's January replacement-cost submissions were not material to his claim at that time. And because the jury was repeatedly and correctly advised that only "material" misrepresentations were relevant,[11] its acquittals on mail fraud counts relating to dates

---

[11]*See* Trial Tr. 78 (Apr. 8, 2009) (court's instruction that an essential element of mail fraud is that the "defendant knowingly

before May 13 did not necessarily mean that Coughlin had made no false economic submissions before that date.[12]

At oral argument, Coughlin contended that, because the purpose of his April 30 mailing was to request a hearing on economic as well as non-economic damages, it is unlikely the jury would have decided that he had no fraudulent intent on April 30 without also deciding that he lacked such intent on May 13. This argument is not without force, but it does not prevail. It is true that, by acquitting him of mail fraud on April 30, the jury decided that Coughlin's effort to obtain some compensation for economic loss was not -- at that time -- made in bad faith. But the government submitted evidence from which a jury could have found that *thereafter* he developed an intention to fraudulently overstate his economic losses. For example, Coughlin testified that he did not start putting together the schedule outlining his economic damages until a few days before the May 13 hearing. Trial Tr. 150-51 (Apr. 1, 2009). And there is no dispute that his May 13 submissions contained

---

devised . . . a scheme to defraud and to obtain money by means of *materially* false or fraudulent pretenses, representations or promises") (emphasis added); *id.* at 80 (defining materiality); Trial Tr. 12-13 (Apr. 7, 2009) (government's statement that Coughlin's misrepresentations "have to be [of] material facts" and that a false representation is not material if "he is not going to get more money or less money based on" that representation); *see also Neder v. United States*, 527 U.S. 1, 25 (1999) (holding "that materiality of falsehood is an element of the federal mail fraud . . . statute[]").

[12]Even if the January replacement-cost submissions were material, Coughlin's May 13 submissions contained economic-loss calculations that he had never previously presented -- as we note in the next paragraph. A rational jury could have found that the earlier submissions were legitimate without necessarily so finding with respect to the later ones.

alleged economic losses that he had never previously presented.[13] Thus, the jury could have found that Coughlin lacked fraudulent intent in seeking to obtain some legitimate economic damages on April 30, without also finding that he did not make fraudulent claims about his economic losses at a later date.

The Supreme Court has instructed that we are to focus only on what the jury "necessarily" decided, and to refrain from barring a retrial if a "rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Yeager*, 129 S. Ct. at 2367 (quoting *Ashe*, 397 U.S. at 444). Here, a rational jury could have grounded its mail fraud acquittals upon the absence of fraudulent intent with respect to claims Coughlin made as of April 30, without believing that he also lacked such intent with respect to claims he made on May 13.[14]

---

[13]*See, e.g.*, Past Economic Losses (R.E. 2798) (claiming a loss of $7,031 from work missed for doctor and physical therapy appointments, a figure never previously offered); Future Economic Losses (R.E. 2800) (claiming future losses for such appointments of $7,969 annually, a figure also not previously offered).

[14]Coughlin further contends that the evidence the government offered to prove guilt on Count Seven demonstrates that it could only have been operating under an "all-or-nothing" theory throughout. Appellant's Br. 58. Coughlin makes this inference because the government did not present evidence regarding how the VCF calculated his final award of $331,034 (beyond indicating that $180,000 was for non-economic damages and $151,034 was for economic damages). But Coughlin's inference -- that the absence of such evidence means the government did not "actually assert[] the alternate theory of the 'narrower scheme,'" Appellant's Reply Br. 16 -- is belied by the prosecutor's express language. As we have already observed, the prosecutor argued that there was new fraud on May 13,

4. Next, Coughlin urges us to reject the government's "narrower scheme" argument on the ground of waiver. As he correctly notes, the United States did not make that argument in the opposition it filed to Coughlin's renewed double jeopardy motion in the district court. Gov't's Opp'n to Def.'s Renewed Mot. to Bar Re-Trial at 4-6. Nor was it the basis of the district court's decision.

It is well settled that "this court can affirm a correct decision even if on different grounds than those assigned in the decision on review." *Skinner v. Dep't of Justice*, 584 F.3d 1093, 1100 (D.C. Cir. 2009) (internal quotation marks omitted). Although "absent exceptional circumstances" we generally will not do so "on grounds that were not raised in the district court," *id.*, the circumstances here are exceptional. Coughlin's renewed motion came on June 21, 2009, in the midst of the second trial and just three days after the Supreme Court decided *Yeager*. The government had only three days -- without benefit, as Coughlin acknowledges, of trial transcripts -- to file its response. *See* Appellant's Reply Br. 19. Its failure to assert the narrower-scheme argument in its opposition is therefore excusable.

Moreover, the government *did* raise the argument shortly thereafter when, on July 6, it filed an opposition to Coughlin's request for a stay of trial in this court. Appellee's Mot. to Summarily Dismiss and Opp'n to Appellant's Emergency Mot. to Stay Proceedings at 25-27, *United States v. Coughlin*, No. 09-3062 (D.C. Cir. July 6, 2009). Coughlin was thus aware early on that the government would press the narrower-scheme argument on appeal. Indeed, he addressed it in his initial brief and at greater length in his reply brief. The extent of briefing is a factor we look to in "exercising [our] discretion" to entertain

---

and that the jury could convict without believing the entire scheme was fraudulent. *See supra* Part IV, IV.A, IV.B.1.

arguments not addressed by the district court.  *See Texas Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 697 (D.C. Cir. 1991).  And we can identify no prejudice to the defendant from our considering the narrower-scheme argument notwithstanding the government's failure to raise it in its June 24, 2009 response.[15]

5. Finally, Coughlin seeks protection in two cases in which the Supreme Court held that issue preclusion barred retrials. The first case is *Ashe v. Swenson*, in which six poker players were robbed by a group of masked men.  397 U.S. at 437-38. Ashe was first tried and acquitted of robbing one of the six players.  "Because the only contested issue at the first trial was whether Ashe was one of the robbers," the Court "held that the jury's verdict of acquittal collaterally estopped the State from trying him for robbing a different player during the same criminal episode."  *Yeager*, 129 S. Ct. at 2366-67 (citing *Ashe*, 397 U.S. at 446).  The second case is *Sealfon v. United States*, in which Sealfon was tried and acquitted of the charge of conspiring to defraud the United States by presenting false invoices to a government board.  332 U.S. at 576-77. Thereafter, he was tried on the charge of aiding and abetting a man named Greenberg in presenting the same invoices. Because there was no evidence at the first trial that Sealfon could have conspired with anyone other than Greenberg, the Court concluded that his acquittal necessarily meant that he did not aid and abet Greenberg in presenting the invoices.  *Id.* at 579-80.

---

[15]The only prejudice Coughlin identifies arises not from the government's failure to make the argument in its response to the double jeopardy motion, but rather from its alleged failure to present a narrower-scheme theory to the jury.  But as we have detailed above, the government's trial presentation on that score was sufficient.  *See supra* Part IV.A, B.2.

For reasons that by now should be clear, this case is unlike *Ashe* or *Sealfon*. At Coughlin's first trial, a unitary scheme to defraud the VCF was not the only contested issue; there was also the question of whether he had fraudulent intent with respect to any part of his claim. Nor was the evidence limited to a unitary scheme; there was also evidence supporting the accusation that Coughlin made new fraudulent representations at the May 13 hearing. Accordingly, neither *Ashe* nor *Sealfon* advances Coughlin's cause.[16]

V

For the foregoing reasons, we reverse the district court's denial of Coughlin's double jeopardy motion with respect to Counts One and Four, and direct the district court to dismiss those counts. With respect to Counts Six and Seven, we affirm the district court and remand for further proceedings consistent with this opinion.

*Reversed in part and affirmed in part*.

---

[16]Coughlin also presses upon us the Fifth Circuit's decision on remand in *Yeager*, 334 Fed. App'x 707 (5th Cir. 2009), and this Circuit's decision in *United States v. Bowman*, 609 F.2d 12 (D.C. Cir. 1979), both of which are inapposite for the same reasons as *Ashe* and *Sealfon*.