UNITED STATES of America, Appellee,

v.

David A. PLESS, Appellant.

No. 94–3169.

United States Court of Appeals, District of Columbia Circuit.

Argued March 4, 1996.

Decided April 2, 1996.

Sandra G. Roland, Assistant Federal Public Defender, argued the cause for appellant, with whom A.J. Kramer, Federal Public Defender, Washington, DC, was on the briefs.

E. Vaughn Dunnigan, Assistant United States Attorney, argued the cause for appellee, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, Roy W. McLeese, III, and Harry R. Benner, Assistant United States Attorneys, Washington, DC, were on the brief.

Before: EDWARDS, Chief Judge, SILBERMAN and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellant David Pless challenges his conviction for bank fraud on grounds that the court constructively amended the indictment in its jury instructions, the court's instruction on his defense of good faith belief was inadequate, and the court improperly admitted under Federal Rule of Evidence 404(b) evidence of the defendant's failure to pay corporate and personal federal taxes. We affirm.

## I.

Pless owned and managed Allied Atlantic, a sign manufacturing business. The corporation had bank accounts at both First American Bank of Maryland and the National Bank of Washington. The latter bank also had made a loan to the corporation of $110,000. Almost immediately after opening the two accounts and receiving the loan, Pless began experiencing difficulties that were aggravated by the acquisition of a second company, for which he was unable to secure an expected second loan from National. He began to overdraw the company accounts in both banks and, in order to hide the overdrafts, he cross-deposited checks in the two banks. This is a classic check kite. The check kiter depends on the time lag between the point his account is credited at the depositing bank and the point at which the check "clears" the account upon which it is drawn. In the interim—during the float, as it is called—the check kiter appears to have, and may use, more funds than he actually has.

When National first noticed Pless was overdrawn, a bank officer agreed to convert the overdrawn amount, $135,000, into a new loan. However, not only did Pless fail to repay this "loan" within the 31 days agreed upon, but the overdrafts continued. While National frequently contacted Pless over the following six to nine months about repaying the $135,000, it did not put holds on his deposits or stop payment on his checks. Between June 1989 and March 1990, Pless transferred approximately $47 million from First American to National and approximately $48 million from National to First American. He spent almost four hours a day driving to multiple bank branches to make deposits in order to maintain positive account balances. First American eventually realized that the account might be in trouble, and after talking to Pless, refused to honor any more checks, while still accepting deposits. This caused funds to gravitate to First American, which ultimately lost no money, while the National account ended up overdrawn by more than one million dollars.

Pless was indicted under 18 U.S.C. § 1344(1) (1994), which penalizes anyone who "knowingly executes, or attempts to execute, a scheme or artifice—(1) to defraud a financial institution...." Under the heading "Counts One Through Three," the indictment described in twelve paragraphs the scheme to defraud First American and National and the series of transactions involving the two banks. In paragraph thirteen, the indictment charged three *executions* of the scheme through deposits of First American checks at National. The indictment did not charge as an execution any withdrawals from or deposits to First American, which gives rise to the major dispute in this case. The government did produce evidence at trial, without objection, that appellant intended to defraud both banks. But appellant asserted that since the unit of prosecution for the crime is the execution of the scheme, rather than the scheme itself, and only the deposits at National were set forth in the execution portion of the indictment, the government could not submit the issue of intent to defraud First American to the jury. On the same "one bank" theory, he claimed that his defense—that he had a good faith belief that his overdrafts at National would be treated as a loan—if accepted, would be a complete defense to the charge.

The government, in order to rebut that defense, introduced evidence over objection that appellant had failed during the perpetration of the scheme to pay corporate, employee withholding, and personal federal taxes. The court, also over a defense objection, instructed the jury—and submitted a special verdict form to the same effect—that it could find appellant guilty if he had intended to defraud either or both banks.[1] The court rejected appellant's request that the jury be instructed that if it found he held a good faith belief that National had consented to his actions, it "must" acquit, because that would not be a complete defense to the charges. The jury found the defendant had intended to defraud both banks and convicted him on all three counts.

## II.

Appellant's primary argument before us is that the indictment was constructively amended when the court instructed the jury that it could find Pless guilty if he intended to defraud either or both banks. Relying on a substantial body of precedent that holds the prosecution to a very strict reading of an indictment, *see, e.g., Stirone v. United States,* 361 U.S. 212, 217–19, 80 S.Ct. 270, 273–74, 4 L.Ed.2d 252 (1960) (amendment of an indictment violates the Fifth Amendment's Grand Jury Clause and is *per se* reversible error); *United States v. Floresca,* 38 F.3d 706, 711 (4th Cir.1994) (en banc) (same), appellant contends that only his intent *vel non* to defraud National can be relevant in this case since the counts charged were the three deposits at National. Appellant seeks to bolster his claim by asserting that only deposits would qualify as "executions" and that the government could not have included First American deposits because the District of Columbia district court would not be the appropriate venue for charges arising out of those deposits.

We very much doubt the validity of either of appellant's background assumptions. A check kite is like a game of musical chairs; the last bank to discover the fraudulent scheme will likely be stuck with the loss. But since the identity of the unlucky bank cannot be known during the kite, a withdrawal from one account seems as much an act of execution of the scheme as a deposit in another account. Nor is it apparent to us that venue in the district court could not have included acts of execution in Maryland. *See* 18 U.S.C. § 3237(a) (1994) (a multi-jurisdiction offense may be "prosecuted in any district in which such offense was begun, continued, or completed"). In any event, the government only alleged as acts of execution the three deposits at National. It somewhat ruefully acknowledges that it conceded below that venue for acts of execution in Maryland was not possible.

---

1. The special verdict form was in addition to a "regular" verdict form that asked the jury to decide whether the defendant was guilty or not guilty on the three counts of executing the scheme to defraud.

Be that as it may, we think appellant's logic, while creative, is fallacious. That the government chose to charge as the *execution* of the scheme only the three deposits in National does not reduce the boundaries of the *scheme*, which the statute requires the government to prove. To be sure, as appellant insists, under this statutory crime—unlike a conspiracy charge—the unit of prosecution is not the scheme but the execution. *See, e.g., United States v. Poliak*, 823 F.2d 371, 372 (9th Cir.1987), *cert. denied*, 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 901 (1988). If appellant did not execute the scheme, he would not be guilty. But that by no means suggests that the government is artificially limited to presenting to the jury only that portion of the scheme that directly related to National. Although appellant appeared to concede at oral argument that the government was entitled to introduce evidence of the entire scheme, he claimed that evidence of appellant's intent as it related to First American could not be introduced. This suggested limitation is nonsensical. It assumes that it would be illogical for the jury to conclude that the scheme—which covered both banks—was executed by the three deposits into National. Of course that is not so. The jury could logically conclude that the scheme was *in part* executed by the three deposits. And it is not necessary for the government to charge every single act of execution of the scheme in order to prove the whole scheme. We therefore do not regard the judge's instruction to the jury—permitting the jury to find the defendant guilty if it concluded that he had intended to defraud either of the two banks—as a constructive amendment to the indictment. *Cf. United States v. Sayan*, 968 F.2d 55, 59 (D.C.Cir. 1992) (no constructive amendment where variations in proof or jury instructions did not create the risk that the defendant was convicted of a materially different crime).

For similar reasons we do not think it was error for the district judge to refuse appellant's request to instruct the jury that it "must" acquit if it found appellant had a good faith belief that National consented to his actions. The judge instead told the jury that it should "consider" the defendant's asserted good faith belief in deciding whether he intended to defraud *either* bank. Under the foregoing analysis, the judge correctly determined that even if appellant did believe that National had consented to his transactions, he would still be guilty if he intended to defraud First American. (Appellant does not even suggest that First American knew of and consented to the check-kiting scheme.)[2]

■ Appellant also challenges the admission of evidence that during the period of the check kite he failed to pay corporate, employee withholding, and personal taxes. The evidence is said to have violated Rule 404(b)'s prohibition against "other crimes" evidence that is admitted only to show a criminal defendant's bad character or his propensity to commit the charged crime. Alternatively, the evidence is alleged to have been too prejudicial under Rule 403. The government explained below, and reasserts here, that the evidence is appropriate under 404(b) because it was submitted to show defendant's "intent" and "plan," in order to rebut the notion that appellant believed National consented to his transactions with that bank. Although the issue is close, we think the government's argument that it is more likely that the defendant intended to defraud both (or either) banks if at the same time he was failing to pay other corporate liabilities, is plausible. And the prosecutor's carefully constrained use of the evidence, in conjunction with the judge's limiting instruction, renders any potential for prejudice minor. Given the deferential standard of review of a district judge's determinations under Rules 404(b) and 403—abuse of discretion—we do not believe the decision to admit the evidence is reversible. *See, e.g., Jankins v. TDC Management*

---

**2.** We also think meritless appellant's contention that his conviction must be reversed because the witness who testified to First American's FDIC-insured status, which is required for federal jurisdiction, did so without personal knowledge. Appellant did not object below, so "extraordinary circumstances" are necessary for reversal, *Unit-*

*ed States v. Nnanyererugo*, 39 F.3d 1205, 1208–09 (D.C.Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1969, 131 L.Ed.2d 858 (1995). And in any event, National's FDIC-insured status, which was not challenged, is sufficient to support the conviction.

*Corp., Inc.,* 21 F.3d 436, 440 (D.C.Cir.1994) ("The line [beyond which evidence is admissible under 404(b) ] is doubtless inexact, and we review only for abuse of discretion."); *United States v. Mitchell,* 49 F.3d 769, 777 (D.C.Cir.1995) (Rule 403 balance reviewed for abuse of discretion).

\*　　\*　　\*　　\*　　\*　　\*

The district court's judgment is therefore *Affirmed.*