# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 11, 2024                    Decided May 17, 2024

No. 23-3080

UNITED STATES OF AMERICA,
APPELLEE

v.

EGHBAL SAFFARINIA,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cr-216)

———

*Jennifer E. Fischell* argued the cause for appellant. With her on the briefs were *Eric R. Nitz*, *Justin V. Shur*, and *Robert Y. Chen*.

*Sonja M. Ralston*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were *Edward Sullivan* and *John Taddei*, Trial Attorneys, Public Integrity Section Criminal Division.

Before: HENDERSON and WILKINS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: For five years, Eghbal Saffarinia ("Saffarinia" or "Appellant") was a high-ranking official within the Department of Housing and Urban Development's Office of the Inspector General ("HUD-OIG"). Federal law mandated that, because of his seniority and level of responsibility within the federal government, Saffarinia was required to file annual financial disclosure forms detailing most of his financial liabilities over $10,000. This form, the Office of Government Ethics ("OGE") Form 278, allows federal government agencies to learn of, investigate, and evaluate potential conflicts of interest among senior government officials. The disclosure requirements, in turn, promote the ideals of ethics and transparency in the administration of the federal government.

One of Saffarinia's central responsibilities within HUD-OIG was the allocation of HUD-OIG's information technology ("IT") contracts. These contracts involve extensive financial commitments by HUD-OIG that stretch over multiple years and are worth tens of millions of dollars. Because the contracts are so lucrative, they are highly attractive to potential contractors.

In 2014, a contractor who lost out on a HUD-OIG contract filed a bid protest, resulting in an investigation that uncovered Saffarinia's repeated falsifications of his Forms 278 and failures to disclose financial liabilities over $10,000. The investigation also revealed that one of the persons from whom Saffarinia had borrowed money was the owner of an IT company that had been awarded HUD-OIG IT contracts during

the time when Saffarinia had near-complete power over the agency operation.

Following a thorough investigation, the Government presented criminal charges against Saffarinia to a federal grand jury. The grand jury indicted Saffarinia on seven counts, including three counts of obstruction of justice under 18 U.S.C. § 1519. A jury then convicted Saffarinia on all seven counts. The District Court sentenced Saffarinia to a year and a day in federal prison, followed by one year of supervised release.

Saffarinia now appeals his conviction. First, he argues that Section 1519 does not extend to alleged obstruction of an agency's review of Forms 278 because review of these forms is insufficiently formal to fall within Section 1519's ambit. Second, he argues that the evidence presented at trial diverged from the charges contained in the indictment, resulting in either the constructive amendment of the indictment against him or, in the alternative, a prejudicial variance. Finally, Saffarinia challenges the sufficiency of the evidence presented against him at trial.

On the record before us, we can find no basis to overturn Saffarinia's conviction. Accordingly, we affirm the judgment of the District Court.

## I.    BACKGROUND

### A.  Factual Background

Certain high-ranking government officials are required to report most financial liabilities over $10,000 via OGE Form 278. *See* 5 C.F.R. §§ 2634.201(a), 2634.202(c), 2634.305. As noted above, these forms allow an agency to investigate potential conflicts of interest and ensure the propriety of

agency officials' work. The forms that are filed are reviewed by multiple officials within the agency, including by legal counsel within HUD-OIG and by an attorney in HUD's Office of General Counsel whom OGE has designated as HUD's "agency ethics official."

Between 2012 and 2017, Saffarinia served as HUD-OIG's Assistant Inspector General for Information Technology, and later as the Assistant Inspector General for Management and Technology. Saffarinia was part of the Senior Executive Service ("SES"), a class of top-ranking officials and managers within the federal government's civil service. Because of his seniority and rank as an SES official, Saffarinia was required to file Forms 278 annually.

As part of his duties within HUD-OIG, Saffarinia oversaw HUD-OIG's selection of an IT Services contractor. The IT contract is the largest contract HUD-OIG has, with typical terms running five to seven years and totaling between 20 to 30 million dollars. Prior to Saffarinia's arrival at HUD-OIG, STG Incorporated ("STG") had provided HUD-OIG with IT services for about a year under a short-term "bridge" contract, a form of contract the agency uses to maintain IT support in between its award of longer-term contracts. STG had also submitted a bid to serve the agency under a longer-term contract and, at least inside the agency, STG had been identified as the likely winner of the long-term contract. However, when Saffarinia assumed leadership of the operation in early 2012, he cancelled the pending contract award to STG. Following the cancellation, a vice president at STG contacted Saffarinia to discuss how STG could best serve HUD-OIG's IT, both in its current bridge contract and moving forward. In a meeting with STG officers, Saffarinia suggested that the company consider subcontracting with Orchid Technologies ("Orchid"), a company owned by

Saffarinia's friend, Hadi Rezazad. Saffarinia never explained why he recommended Orchid, nor did he reveal his personal or financial relationship with Rezazad. Pursuant to Saffarinia's advice, STG arranged for Orchid to become one of its subcontractors even though STG officers had never previously heard of the company. STG, partnering with Orchid, then won the HUD-OIG IT contract.

STG's contract was cancelled and reopened for bids a little more than a year later. In this round of solicitations, Orchid partnered with a different company and won HUD-OIG's contract, which was valued at 17 million dollars. STG subsequently filed a bid protest. Over the next year, STG's protest resulted in "multiple corrective actions," in which HUD-OIG "acknowledge[d]" problems in the contracting process and attempted to correct them. Joint Appendix ("J.A.") 1074. STG ultimately alleged that Saffarinia had steered contracts to Orchid because of his relationship with Rezazad. Around the same time, Saffarinia was also accused of workplace misconduct and favoritism towards certain employees.

Because of Saffarinia's high-ranking position within the agency office normally tasked with investigating allegations of official misconduct, HUD-OIG could not investigate either the contract-steering or misconduct accusations against Saffarinia due to a conflict of interest. HUD-OIG therefore referred both allegations to the Council of the Inspectors General on Integrity and Efficiency ("CIGIE"), an entity required by statute to identify an impartial OIG to investigate allegations of misconduct against officials in positions such as the one held by Saffarinia. *See* 5 U.S.C. app. 3 § 11(d).

Following an initial stage of the investigation led by the OIG of the Office of the Director of National Intelligence, the

contract-steering allegations against Saffarinia were referred to the Federal Bureau of Investigation ("FBI") for further inquiry. Through a yearslong inquiry conducted with assistance from HUD-OIG staff, the FBI learned that Rezazad had loaned Saffarinia $80,000 in 2013. Saffarinia had also received a $90,000 loan from a neighbor, Patricia Payne. Saffarinia did not report the loan from Rezazad on his 2014, 2015, or 2016 Forms 278, nor did he report the loan from Payne on his 2016 Form 278.

## B. Procedural History

A federal grand jury indicted Saffarinia on seven charges on June 25, 2019. Count 1 of the indictment charged Saffarinia with concealment of a material fact (his relationship with Rezazad) under 18 U.S.C. § 1001(a)(1) and (2). Counts 2-4 charged Saffarinia with false statements, specifically his failure to disclose his loans from Rezazad and Payne, in violation of 18 U.S.C. § 1001(a)(2). Counts 5-7 of the indictment charged Saffarinia with obstruction of justice under 18 U.S.C. § 1519, based on the allegation that Saffarinia had "falsely failed to report certain liabilities owed in the form of promissory notes" on "forms to be filed with HUD and OGE," with the intent to obstruct the "investigation" or "proper administration" of "a matter within the jurisdiction of a department and agency of the United States." J.A. 56.

In July 2019, Saffarinia moved for a bill of particulars, seeking further clarification of the investigation or matter that underlay the obstruction-of-justice charge. The Government opposed the motion and the District Court denied Saffarinia's request, finding that the indictment provided Saffarinia with sufficient notice of the matters and investigations at issue and explicitly identified the false statements Saffarinia was accused of making on his Forms 278. The District Court thus held that

Saffarinia had "sufficient information through discovery" to mount an adequate defense. *United States v. Saffarinia*, 422 F. Supp. 3d 269, 278 (D.D.C. 2019).

Saffarinia also sought to exclude evidence relating to the misconduct allegations. The District Court granted the motion in part, based on a concern over "the significant risk of unfair prejudice that would come from informing the jury that another entity investigated Mr. Saffarinia, found impropriety, and removed him from his position." J.A. 776. The Government moved to clarify the District Court's ruling and, in response, the District Court allowed the Government to explain the process of and provide evidence regarding the CIGIE/FBI investigation as evidence regarding the investigation Saffarinia was alleged to have obstructed.

Following a jury trial, Saffarinia was convicted on all counts. Saffarinia then sought a judgment of acquittal or a new trial. The District Court denied Saffarinia's motion. The District Court subsequently sentenced Saffarinia to one year and one day in prison. Saffarinia now appeals his conviction.

## C.  Statutory Background

Passed as part of the Sarbanes-Oxley Act of 2002, Section 1519 "instituted new penalties for fraud and obstruction of justice following 'a series of celebrated accounting debacles.'" *United States v. Yielding*, 657 F.3d 688, 710 (8th Cir. 2011) (quoting *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 484 (2010)). At the time of its passage, Congress was especially concerned with the destruction or coverup of "evidence of financial wrongdoing." *Yates v. United States*, 574 U.S. 528, 536 (2015). The text of the statute provides:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1519. In *Yates*, the Supreme Court clarified the scope of Section 1519, tying its application to "its financial-fraud mooring," *Yates*, 574 U.S. at 532, and held that "'[t]angible object' in § 1519 . . . cover[s] only objects one can use to record or preserve information, not all objects in the physical world," *id.* at 536.

## II.  ANALYSIS

### A.  Standard of Review

We review preserved claims of statutory interpretation, constructive amendment to an indictment, and variance from an indictment *de novo*. *See United States v. Wilson*, 290 F.3d 347, 352 (D.C. Cir. 2002); *United States v. Mize*, 814 F.3d 401, 408 (6th Cir. 2016). In considering a challenge to the sufficiency of the evidence to support conviction, we "must view the evidence in the light most favorable to the government and accept the jury's guilty verdict if we conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v.*

*Brockenborrugh*, 575 F.3d 726, 733 (D.C. Cir. 2009) (quotations omitted).

## B. The Scope of Section 1519

At the threshold, Saffarinia argues that his alleged wrongdoings are not proscribed by Section 1519. He claims:

> Section 1519 requires "intent to impede, obstruct, or influence" one of the following: (1) an existing or contemplated "investigation" within a federal agency's jurisdiction; (2) the "proper administration of [an existing or contemplated] matter" within a federal agency's jurisdiction; or (3) an existing or contemplated "case filed under title 11 [the Bankruptcy Code]." The ordinary-course review of Saffarinia's Forms 278 by HUD or OGE does not qualify: Neither "investigation" nor "matter" encompasses routine review of a form.

Brief ("Br.") for Appellant 46. We disagree.

Section 1519 is capacious, reflecting a deliberate choice by Congress to capture the sorts of activity with which Saffarinia was charged. The text of the statute reaches anyone who "knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States." 18 U.S.C. § 1519. Here, Saffarinia was charged with lying on his Forms 278 – or, to use Section 1519's words, "falsif[ying] . . . document[s]" – which are administered, reviewed, and subject to further investigation by HUD and OGE, both a "department or agency of the United States." There is little reason for us to linger over this question of

statutory interpretation: the charges against Saffarinia fit Section 1519's bill.

It is undisputed that Section 1519 was passed to close loopholes in the existing framework of liability for obstruction of justice. *See* S. REP. No. 107-146, at 14 (2002); *see also Yates*, 574 U.S. at 536 ("Section 1519 cured . . . conspicuous omission[s]" in the prior regime.). "[O]bstruction of justice is a crime that Congress . . . has aggressively sought to deter." *United States v. McQueen*, 727 F.3d 1144, 1159 (11th Cir. 2013). In line with this purpose, Congress intentionally wrote Section 1519 as a "statute of substantial breadth." *Yielding*, 657 F.3d at 713. The Senate Report on Section 1519 explains that, "[w]hen a person destroys evidence with the intent of obstructing any type of investigation and the matter is within the jurisdiction of a federal agency, overly technical legal distinctions should neither hinder nor prevent prosecution and punishment." S. REP. 107-146, at 7. The Senate Report goes on to make specific note that Section 1519 is "meant to do away with the distinctions, which some courts have read into obstruction statutes, between court proceedings, investigations, regulatory or administrative proceedings (whether formal or not), and less formal government inquiries, regardless of their title." *Id.* at 15.

Saffarinia argues that Section 1519 applies only to formal, adversarial, or adjudicative proceedings, not merely "form-review." Br. for Appellant 47. There is no such limitation in Section 1519. "If Congress's goal were to criminalize a subset of obstructive behavior, it easily could have used words that precisely define that subset[.]" *United States v. Fischer*, 64 F.4th 329, 344 (D.C. Cir.), *cert. granted*, 144 S. Ct. 537 (2023). Here, Congress used no words, precise or otherwise, to reference a requirement of formality. Indeed, the legislative history shows its purpose was the exact opposite. With the

enactment of Section 1519, Congress sought "to do away with the distinctions . . . some courts [had] read into obstruction statutes" imposing a floor of formality. S. REP. 107-146, at 15.

Nor does the Supreme Court's interpretation of "due administration" in *Marinello v. United States*, 584 U.S. 1 (2018), control the construction of the distinct phrase "proper administration" under Section 1519. In *Marinello*, the Supreme Court interpreted a clause of the Internal Revenue Code which made it a felony to "'corruptly or by force' to 'endeavo[r] to obstruct or imped[e] the due administration of" the Tax Code. *Id*. at 4 (alterations in original) (quoting 26 U.S.C. § 7212(a)). The Court held that "'due administration of [the Tax Code]' does not cover routine administrative procedures that are near-universally applied to all taxpayers, such as the ordinary processing of income tax returns." *Id*. (alteration in original). Saffarinia claims that because the Supreme Court found that certain routine administrative procedures did not fall within "due administration" of the Tax Code, HUD and OGE's review of Forms 278 does not fall within "proper administration" under Section 1519. We are not persuaded.

Congress passed Section 1519 with text and a purpose quite distinct from the statute considered in *Marinello*. *See United States v. Scott*, 979 F.3d 986, 992 (2d Cir. 2020) (noting "the clear differences between the statutory language at issue in *Marinello* and that of § 1519"). Key is that Congress wrote Section 1519 in unmistakably broad terms, whereas such clear breadth was not present in the statute under consideration in *Marinello*. *See Marinello*, 584 U.S. at 7 (finding that the "literal language of the statute is neutral" as to its breadth). With no basis in text or congressional purpose, we cannot adopt

*Marinello*'s interpretation of a different phrase in a distinct context to control the construction of Section 1519.

## C. Constructive Amendment and Variance

Contrary to Saffarinia's claims, we find that the Government neither constructively amended his indictment nor prejudicially varied the charges against him. Saffarinia argues that because the Government presented evidence about the CIGIE/FBI investigation to the jury, Saffarinia was convicted for obstruction of this investigation alone, a charge not contained in the indictment. There is no basis in the record to support this claim.

"An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A variance occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Gaither v. United States*, 413 F.2d 1061, 1071 (D.C. Cir. 1969) (footnotes omitted). In functional terms, "a constructive amendment changes the charge, while the evidence remains the same; a variance changes the evidence, while the charge remains the same." *United States v. Stuckey*, 220 F.3d 976, 981 (8th Cir. 2000).

Though both pertain to departures from an indictment, constructive amendment and prejudicial variance raise distinct constitutional concerns. "An amendment is thought to be bad because it deprives the defendant of his right to be tried upon the charge in the indictment as found by the grand jury and hence subjected to its popular scrutiny. A variance is thought to be bad because it may deprive the defendant of notice of the details of the charge against him and protection against

reprosecution." *Gaither*, 413 F.2d at 1071-72 (footnote omitted). Thus, constructive amendment bears on a defendant's right under the Fifth Amendment to indictment by a grand jury and requires no showing of prejudice for reversal whereas a variance is relevant to a defendant's right to notice under the Sixth Amendment and must be prejudicial to warrant reversing a defendant's conviction. *United States v. Adams*, 604 F.3d 596, 599 (8th Cir. 2010).

To demonstrate constructive amendment of an indictment, "the defendant must show that the evidence presented at trial *and* the instructions given to the jury so modif[ied] the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the grand jury's indictment." *United States v. Lorenzana-Cordon*, 949 F.3d 1, 5-6 (D.C. Cir. 2020) (alteration in original) (quotation omitted). Attention to the fit between the jury instructions and the indictment is particularly important as "jury instructions requiring the jury to find the conduct charged in the indictment before it may convict" provide the court with assurance that "the jury convicted the defendant based solely on the conduct actually charged in the indictment." *United States v. Ward*, 747 F.3d 1184, 1191 (9th Cir. 2014); *see also United States v. Pless*, 79 F.3d 1217, 1219-20 (D.C. Cir. 1996) (no constructive amendment where jury could logically conclude that defendant was guilty of crimes charged in indictment pursuant to instructions given); *United States v. Mize*, 814 F.3d 401, 410 (6th Cir. 2016) (no constructive amendment where jury instruction specifically explained that defendants could be convicted only of the crimes charged in the indictment).

Here, Saffarinia cannot show constructive amendment because there was no inconsistency between the indictment and the jury instructions. Quite to the contrary, the jury instructions closely tracked the language of the indictment. The indictment

charged Saffarinia with causing falsified forms "to be filed with HUD and OGE." The District Court instructed the jury that to convict Saffarinia under Section 1519, they must find that he "acted with the intent to impede, obstruct or influence the investigation or proper administration of any matter or in contemplation of or relation to any such matter" and that "the investigation or proper administration of a matter was within the jurisdiction of HUD and OGE." On the third element of the crime, the District Court specifically instructed that, to convict Saffarinia, the jury must "agree unanimously that Mr. Saffarinia acted to impede, obstruct or influence an investigation or proper administration of a matter by the U.S. Department for Housing and Urban Development, by the U.S. Office of Government Ethics or by both."

The clarity of the jury instructions and their fidelity to the indictment means that the jury could not have convicted Saffarinia solely on basis of the evidence presented regarding the CIGIE/FBI investigation. The jury instructions specified that the jury could only convict Saffarinia if it found that he had obstructed HUD or OGE's investigations – no mention was made of CIGIE or the FBI in the District Court's instructions. Accordingly, Saffarinia's conviction is predicated either just on the basis of the evidence of HUD-OGE review or on the basis of the evidence concerning the CIGIE/FBI investigation considered jointly with the evidence of HUD-OGE review.

Saffarinia's contrary arguments are not compelling. In the cases Saffarinia urges us to follow, the juries did not receive instructions limiting the grounds upon which they could convict. *See, e.g.*, *United States v. Lawton*, 995 F.2d 290, 294-95 (D.C. Cir. 1993); *United States v. Leichtnam*, 948 F.2d 370, 380-81 (7th Cir. 1991); *United States v. Adams*, 778 F.2d 1117, 1121, 1124 (5th Cir. 1985); *Stirone v. United States*, 361 U.S. 212, 214 (1960). Saffarinia counters that, despite specifically

referencing HUD and OGE, the jury instructions in his prosecution failed to limit the bases for conviction because the instructions did not explicitly name review of Forms 278 as the HUD-OGE investigation Saffarinia obstructed. But this would have been a step too far. Because HUD referred the investigation to CIGIE given HUD's own inability to investigate in light of Saffarinia's position, the jury could have plausibly found that, as a matter of fact, CIGIE and the FBI were acting as agents of HUD-OGE. The record before us amply shows that the District Court properly instructed the jury here.

We also find no merit in Saffarinia's claim that the Government varied the charges against him. As noted above, a variance must be prejudicial in order to require reversal. *See Lorenzana-Cordon*, 949 F.3d at 4 ("Variances warrant reversal only when the error had a substantial and injurious effect or influence in determining the jury's verdict." (quotations omitted)). Saffarinia cannot meet this bar.

First, we are doubtful there was a variance. As noted above, whether the CIGIE/FBI investigation was within HUD and OGE's jurisdiction was a question of fact for the jury to determine. Thus, the jury could have reasonably based its conviction on the understanding that CIGIE and the FBI acted on HUD and OGE's behalf in pursuing the investigation into Saffarinia and that, in falsifying his Forms 278, Saffarinia intended to obstruct the investigation consisting of CIGIE and the FBI working at the direction of HUD and OGE. As the Government consistently argued before and during trial, one of the foreseeable consequences of Saffarinia's falsification of his Forms 278 was HUD and OGE's referral of the conflict-of-

interest investigation to CIGIE and the FBI. Thus, we see little light between the indictment and the evidence presented at trial.

Second, even if we accept Saffarinia's claim of variance, it was decidedly not prejudicial. Relevantly, "a discrepancy between the facts alleged in an indictment and the evidence actually proffered may be cause for a new trial if the divergence prejudiced the defendant by depriving him of notice of the details of the charge against him." *United States v. Emor*, 573 F.3d 778, 786 (D.C. Cir. 2009) (quotation omitted). Here, Saffarinia's claim of lack of notice hinges on his discovery strategy: he argues that he would have reviewed the Government's production differently and sought additional discovery had he been on notice of the Government's intention to offer evidence of the CIGIE/FBI investigation at trial. However, as the record shows, the Government produced a considerable amount of discovery concerning the CIGIE/FBI investigation. Saffarinia fails to offer any reason to think that further discovery would have led him to new relevant information concerning the CIGIE/FBI investigation or that it would have materially affected his honest-mistake strategy at trial.

## D. Sufficiency of Evidence

Finally, the record before us convincingly shows that the evidence presented at Saffarinia's trial was sufficient to support his conviction. The witness testimony presented by the Government demonstrated that Saffarinia's failure to disclose the loans he received impeded HUD and OGE's ability to investigate possible conflicts of interest. As the Government's evidence made clear, HUD's investigations of potential conflicts of interest depend on accurate information in employees' Forms 278. Saffarinia quibbles with the formality with which the Forms 278 are reviewed. However, as we have

already noted, his argument misunderstands the proper scope of the statute, which contains no formality requirement. Free from this misreading, there is no question that a jury could reasonably have found Saffarinia intended to obstruct HUD's investigation into conflicts of interest or proper administration of its Forms 278 review based on the evidence presented at trial.

As to Saffarinia's other challenges to the jury instructions and the District Court's evidentiary rulings, we find no merit in them. We reject these claims as well.

### III.    CONCLUSION

For the above reasons, we affirm the District Court's judgment.