# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 24-3129

September Term, 2025

FILED ON: JANUARY 23, 2026

UNITED STATES OF AMERICA,
APPELLEE

v.

HAOTIAN SUN,
APPELLANT

Consolidated with 24-3139

Appeals from the United States District Court
for the District of Columbia
(No. 1:21-cr-00646-1)
(No. 1:21-cr-00646-2)

Before: SRINIVASAN, *Chief Judge*, HENDERSON, *Circuit Judge*, and GINSBURG, *Senior Circuit Judge*

## J U D G M E N T

The Court considered this appeal on the record from the United States District Court for the District of Columbia and on the briefs of the parties. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). The Court has accorded the issues full consideration and determined that they do not warrant a published opinion, *see* Fed. R. App. P. 36; D.C. Cir. R. 36(d), and it is now

**ORDERED AND ADJUDGED** that the judgments of the United States District Court for the District of Columbia be **AFFIRMED**.

### I

Haotian Sun and Peng Fei Xue participated in a scheme to defraud Apple involving the "return" of counterfeit iPhones to Apple. Sun and Xue would receive counterfeit iPhones from Hong Kong and submit them for repair to Apple stores and Apple Authorized Service Providers. The goal of the scheme was to obtain an authentic iPhone from Apple as a replacement, which would then be sent to China for resale.

Following a jury trial, Sun and Xue were convicted of mail fraud in violation of 18 U.S.C. § 1341 — one count for Sun and six counts for Xue — and conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349. The district court sentenced Sun to 57 months of imprisonment on each count, to run concurrently, and Xue to 54 months of imprisonment on each count, also to run concurrently.

## II

Sun challenges the sufficiency of the evidence for his convictions for mail fraud and conspiracy to commit mail fraud. "In considering a challenge to the sufficiency of the evidence to support [a] conviction, we must view the evidence in the light most favorable to the government and accept the jury's guilty verdict if we conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Saffarinia*, 101 F.4th 933, 939 (D.C. Cir. 2024) (cleaned up).

To prove mail fraud under 18 U.S.C. § 1341, the Government must show "(1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme." *United States v. Coughlin*, 610 F.3d 89, 97 (D.C. Cir. 2010); *accord Pereira v. United States*, 347 U.S. 1, 8 (1954) (same). "To commit the offense, the defendant must have fraudulent intent at the time of the charged mailing: that is, he must both have a fraudulent scheme in mind and intend that the mailing further that scheme." *Coughlin*, 610 F.3d at 97-98. To prove conspiracy to commit mail fraud under 18 U.S.C. § 1349, the government must show the defendant "entered into an agreement with another with the intent to commit [mail] fraud." *United States v. Brockenborrugh*, 575 F.3d 726, 733-34 (D.C. Cir. 2009). The Government may rely upon circumstantial evidence to prove that Sun acted with the requisite intent. *See United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1118 (D.C. Cir. 2009); *United States v. Maxwell*, 920 F.2d 1028, 1035 (D.C. Cir. 1990).

Sun claims the Government's evidence was insufficient in three ways. First, Sun argues the Government did not prove that he knowingly participated in a scheme to defraud. This argument is meritless. The Government introduced evidence that Sun knew federal agents had temporarily seized a delivery of iPhones sent to him; Sun was told by federal agents and Apple employees that some iPhones were counterfeit; Sun continued to return iPhones despite the repeated warnings about their authenticity; Sun made statements to others indicating his awareness that his conduct was illegal; and Sun took steps to conceal his involvement and to further the scheme, including by using mailboxes in different zip codes, using different email addresses, and using various names to return the iPhones. This evidence was more than sufficient for the jury to conclude that Sun knowingly participated in a scheme to defraud. *See McFadden v. United States*, 576 U.S. 186, 192 n.1 (2015) (citing "a defendant's concealment of his activities" and "knowledge that a particular [item] is subject to seizure at customs" as circumstantial evidence supporting a jury's finding that the defendant acted knowingly).

Sun does not address most of this evidence. Instead, he cherry-picks evidence that he believes supports his version of events. Even if some of the Government's evidence is "susceptible to innocent explanations, the evidence need not exclude every reasonable hypothesis of innocence

or be wholly inconsistent with every conclusion except that of guilt." *United States v. Shi*, 991 F.3d 198, 209 (D.C. Cir. 2021) (cleaned up). Overall, the evidence amply supported the jury's finding that Sun knowingly participated in a scheme to defraud.

Second, Sun argues the Government did not prove that the two iPhones underlying his mail-fraud conviction were inauthentic. The Government did not need to prove this. "The law is clear that 'innocent mailings — ones that contain no false information — may supply the mailing element.'" *Coughlin*, 610 F.3d at 98 (quoting *Schmuck v. United States*, 489 U.S. 705, 715 (1989)). It was sufficient for the Government to show the mailing was "incident to an essential part of the scheme or a step in the plot." *Schmuck*, 489 U.S. at 710-11 (cleaned up). The evidence established that the scheme involved the submission of counterfeit iPhones to Apple in exchange for authentic replacement iPhones and that many counterfeit phones were in fact submitted; at least 74 phones from just one batch were determined to be inauthentic. Sun returned scores of iPhones to Apple stores in the Washington, D.C. area as part of the scheme, as he did the two iPhones underlying his mail-fraud conviction; just one day earlier, for example, Sun had returned 10 phones across five different Apple stores. Indeed, some stores started recognizing Sun and would reject his phones because of concerns about their authenticity. Moreover, the Apple store where Sun returned those two iPhones had previously received iPhones from Sun and other participants in the scheme. Based upon this evidence, a rational juror could find that Sun's return of those phones was "incident to an essential part of the scheme or a step in the plot." *Id.* (cleaned up).

Third, Sun argues the Government did not prove that he intended for Apple to mail the iPhones underlying his mail-fraud conviction. Wrong again. "Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." *Pereira*, 347 U.S. at 8-9. Sun's co-conspirator testified at trial that he and Sun had traveled to an Apple repair depot in Texas, where Apple would send certain phones for repairs, to "find an insider." JA 502-03. Sun was also instructed to and did use multiple mailing addresses in an attempt to "trick Apple to swap out more phone[s]." *Id.* at 439. Based upon this evidence, a rational juror could find that Apple's mailing of the iPhones was reasonably foreseeable to Sun.

In short, Sun's arguments ignore the evidence in the record supporting his convictions or rely upon a misunderstanding of our case law. We therefore affirm his convictions.

## III

Xue appeals the district court's denial of his motion to suppress evidence obtained through a search of his iPhone and several rulings related to his offense level. Each challenge is meritless, so we affirm his conviction and sentence.

## A.

Xue filed a motion to suppress evidence found pursuant to the execution of two search warrants, one for his iPhone and one for his Google accounts, both of which were denied by the district court. The district court concluded that the warrants satisfied the particularity requirement

of the Fourth Amendment to the Constitution of the United States and that, alternatively, law enforcement relied upon the warrants in good faith. On appeal, Xue claims only that the search warrant for his iPhone was overbroad because the warrant was not limited to specific dates.

Xue's appeal of the denial of his motion to suppress fails because he has not challenged the district court's holding on the good-faith exception. Under the good-faith exception to the exclusionary rule, a court will not exclude "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant," subject to certain exceptions. *United States v. Leon*, 468 U.S. 897, 922 (1984). The district court recited the good-faith exception, discussed arguments Xue raised about that exception with respect to the search of his phone, and explained why it rejected those arguments. In so doing, the district court referenced the "warrants," the affidavits for "the phones," and the "delay in searching the phones." Xue therefore had sufficient notice that the district court's holding on the good-faith exception applied to the warrants to search both his cellphone and his Google accounts. Because he does not challenge that holding, we affirm the denial of his motion to suppress.

**B.**

Xue next argues the district court erred by calculating his offense level based upon intended loss. The district court explained that it would use the greater of actual loss or intended loss to calculate Xue's offense level. The district court then adopted an intended loss amount of greater than $1.5 million because the loss amount for Luo, who recruited Xue to join the scheme, was attributable to Xue pursuant to U.S.S.G. § 1B1.3(a)(1)(B). Xue argues only that the district court should have used actual loss rather than intended loss to calculate his offense level.

Under the version of the Guidelines in effect at the time of Xue's sentencing, the application notes for U.S.S.G. § 2B1.1 stated that "loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A) (2023). Shortly after Xue's sentencing, an amended version of § 2B1.1 went into effect which moved the loss definition from the application notes to the text of U.S.S.G. § 2B1.1(b)(1)(A). *See* U.S.S.G. App'x C Supp. Amend. 827. Since then, the Eleventh Circuit has held that the amendment was a "clarifying" amendment, meaning it applies to direct appeals that were pending when the amendment went into effect. *See United States v. Horn*, 129 F.4th 1275, 1300-01 (2025); *see also United States v. Smaw*, 22 F.3d 330, 333 (D.C. Cir. 1994) (explaining that a clarifying amendment "changes nothing concerning the legal effect of the guidelines, but merely clarifies what the Commission deems the guidelines to have already meant").

We need not decide whether the change to § 2B1.1 was a clarifying amendment in order to resolve Xue's challenge. If, on the one hand, the new version of the Guidelines applies, then the district court's use of the intended loss amount was clearly appropriate. If, on the other hand, we apply the Guidelines in effect at the time of Xue's sentencing, then the district court still properly relied upon the intended loss amount; before the amendment, we had applied the "general rule" under § 2B1.1 that "loss is the greater of actual loss or intended loss." *United States v. Bikundi*, 926 F.3d 761, 797 (2019) (cleaned up); *see also United States v. Studevent*, 116 F.3d 1559, 1561-64 (D.C. Cir. 1997) (affirming a sentence based upon intended loss pursuant to a precursor to

§ 2B1.1).[*] Under either version of the Guidelines, therefore, the district court did not err by relying upon the intended loss amount.

## C.

Xue challenges the two-level increase to his offense level on the ground that "a substantial part of [the] fraudulent scheme was committed from outside the United States." U.S.S.G. § 2B1.1(b)(10)(B). According to Xue, his involvement in the scheme was limited to acts occurring in the United States.

Xue's argument ignores that the guideline is not limited to whether the defendant's activities occurred outside the United States. Instead, it asks whether a "substantial part of [the] fraudulent scheme" occurred outside the United States. U.S.S.G. § 2B1.1(b)(10)(B). The district court found by a preponderance of the evidence that it did.[†] The district court explained that Xue "received shipments of inauthentic phones from Hong Kong," which he then "submitted for repair or replacement at Apple Stores in the United States." JA 1264. Xue does not challenge this finding by the district court. Accordingly, we affirm the district court's application of the enhancement to Xue.

## D.

Finally, Xue raises two challenges with respect to his role in the conspiracy. First, Xue argues the district court erred by applying a two-level enhancement for his role as "an organizer, leader, manager, or supervisor in [the] criminal activity." U.S.S.G. § 3B1.1(c). "A manager or supervisor must exercise some control over others." *United States v. Johnson*, 64 F.4th 1348, 1352 (D.C. Cir. 2023) (cleaned up). We consider

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or

---

[*] Xue does not address this case law or the amendment to § 2B1.1. Instead, Xue relies upon cases from the Third Circuit holding that "loss" in the previous version of § 2B1.1 was limited to "actual loss." *See, e.g.*, *United States v. Banks*, 55 F.4th 246, 255-58 (2022). In addition to being inconsistent with our precedent, the Third Circuit's position is a minority of one among the circuits that have addressed whether to defer to the application note about intended loss. *See, e.g.*, *United States v. Nock*, 148 F.4th 607, 619 (8th Cir. 2025); *United States v. Rainford*, 110 F.4th 455, 475 n.5 (2d Cir. 2024); *United States v. Boler*, 115 F.4th 316, 328-29 (4th Cir. 2024); *United States v. Rao*, 123 F.4th 270, 282-83 (5th Cir. 2024); *United States v. Ponle*, 110 F.4th 958, 961-63 (7th Cir. 2024); *United States v. You*, 74 F.4th 378, 397-98 (6th Cir. 2023); *see also Horn*, 129 F.4th at 1299-1300 (holding that the pre-amendment Guidelines "unambiguously" instructed courts to consider actual and intended loss for crimes covered by § 2B1.1).

[†] Other circuits have held that a sentencing court may apply this enhancement even when the defendant did not "personally take action from outside of the United States." *United States v. Singh*, 291 F.3d 756, 761 (11th Cir. 2002); *see United States v. Arnaout*, 431 F.3d 994, 999 (7th Cir. 2005) (affirming the application of the enhancement "even though all of [the defendant's] racketeering activities occurred within the United States"); *United States v. Luton*, No. 21-1285, 2022 WL 2764202, at *4 (10th Cir. July 15, 2022) ("Numerous courts have held that the enhancement applies even when a particular defendant has not personally acted from outside the United States, in part due to the well-established principle that an act may be imputed from one co-conspirator to another").

organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*United States v. Vega*, 826 F.3d 514, 538 (D.C. Cir. 2016) (quoting U.S.S.G. § 3B1.1, cmt. n.4). "No single factor is dispositive." *Bikundi*, 926 F.3d at 801.

The district court found by a preponderance of the evidence that Xue recruited, trained, and managed others as part of the scheme and profited from their participation. In challenging this finding, Xue relies primarily upon his role in the scheme relative to others. As we have said, however, "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." *United States v. Bras*, 483 F.3d 103, 113-14 (D.C. Cir. 2007) (quoting U.S.S.G. § 3B1.1, cmt. n.4).

The district court recognized that others joined the conspiracy before Xue but found the degree of control that Xue exercised over others justified the enhancement. We see no error in that reasoning.

Xue also challenges the district court's finding that Luo's testimony and his identification of "Rex" as a person recruited by Xue was credible. It is well settled that the "district court's credibility determinations are entitled to the greatest deference from this court on appeal." *Vega*, 826 F.3d at 543 (quoting *Carter v. Bennett*, 840 F.2d 63, 67 (D.C. Cir. 1988)). Luo's testimony was also corroborated by text messages between Xue, Luo, and individuals they recruited. Xue does not dispute that these individuals participated in the scheme. Nor does he cite any case requiring the Government to identify with greater specificity the participants over whom the defendant exercised control. We therefore affirm the district court's application of this sentencing enhancement to Xue.

Second, Xue claims he was entitled to a three-level reduction in his offense level because of the modest degree of his participation in the conspiracy. Xue asserts but does nothing to develop this argument. "We do not consider arguments raised in such skeletal form." *Allen v. District of Columbia*, 969 F.3d 397, 405 (D.C. Cir. 2020). In any event, Xue's argument is moot based upon our affirmance of the district court's conclusion that Xue had a supervisory role in the conspiracy.

Because all of Xue's arguments are meritless, we affirm the judgment of the district court.

\* \* \*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**<u>Per Curiam</u>**

7

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:    /s/
       Daniel J. Reidy
       Deputy Clerk